IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DENISE HANSEN, | Case No. 6:15-cv-01954-AC |
| Plaintiff, | OPINION AND ORDER |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

ALAN STUART GRAF, P.C.
208 Pine Street
Floyd, VA 24091
    Attorney for plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

KATHRYN A. MILLER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for defendant

ACOSTA, Magistrate Judge:

Denise Hansen ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is affirmed.[1]

*Procedural Background*

Plaintiff applied for DIB on August 10, 2010, alleging disability as of October 1, 2008, due to tail-bone injury, fatigue, depression, fibrous tumors, gall stones, and mood swings. (Tr. 125-26.) Her application was denied initially and upon reconsideration. (Tr. 113, 125.) A hearing convened on June 5, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 42-111.) On June 17, 2014, the ALJ issued a decision finding plaintiff not disabled. (Tr. 12-22.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this court. (Tr. 1-3.)

*Factual Background*

Born on March 25, 1959, plaintiff was 49 years old on the alleged onset date of disability and and 54 years old on the date of the hearing. (Tr. 42, 126.) Plaintiff attended high school through the eleventh grade and did not obtain a GED. (Tr. 49.) She did, however, attend a vocational school and earned a veterinary tech certificate. *Id.*

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 14.) At step two, the ALJ found plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease. (Tr. 15.)

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of a number of impairments that are so severe as to preclude substantial gainful activity. (Tr. 17.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected her ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

> [She can] perform medium exertion work with lifting and carrying of 50 pounds occasionally and 25 pounds frequently, standing and walking six hours of an eight-hour workday, and sitting six hours of an eight-hour workday. She is limited to frequent kneeling, crouching, and climbing of ramps and stairs. She is limited to occasional stooping and kneeling. The claimant must avoid concentrated exposure to operational control of moving machinery, hazardous machinery, and unprotected heights.

(Tr. 18.)

At step four, the ALJ found plaintiff was capable of performing her past relevant work as a caregiver. (Tr. 21.) Accordingly, the ALJ did not proceed to step five, but concluded instead that plaintiff was not disabled under the Act. (Tr. 22.)

*Discussion*

Plaintiff argues the ALJ erred by: (1) finding plaintiff's symptom testimony not credible; (2) rejecting the opinion of examining physician Anthony Glassman, M.D.; (3) discrediting lay witness testimony; and (4) finding plaintiff did not have a severe mental impairment at step two of the sequential evaluation process.

I. Plaintiff's Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

Page 5 - OPINION AND ORDER

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1193, 1197 (9th Cir. 2004).

At her administrative hearing, plaintiff testified that she was in pain most of the time, and had been unable to work full-time since 2012. (Tr. 18, 59.) Plaintiff testified, however, that she was seeing three clients as a caregiver, was allotted 31 hours per week by her employer, and was earning $10 an hour. (Tr. 18, 71.) Plaintiff felt she was able to stand and walk for 3-4 hours per 8-hour workday, but that she could not work more than two consecutive 8-hour workdays. She explained that she needed assistance lifting and transferring two of her clients. (Tr. 18, 71, 73-75.)

In her SSA disability application materials, plaintiff indicated she can walk a couple of blocks and then rest for 5-10 minutes before resuming; can lift 5 pounds with her right arm, but finds lifting more than 5 pounds very painful; is able to prepare simple meals and perform some housekeeping activities, albeit slowly; is able to drive; socializes with family members; can follow written or spoken instructions; and gets along "OK" with authority figures. *See* (tr. 282-87). She expressed trouble handling stress, and sometimes feels very angry and "tired of everything." *Id.*

The ALJ found plaintiff's statements "concerning the intensity, persistence, and limiting effects" of her symptoms not entirely credible. (Tr. 19.) Plaintiff argues the ALJ erred in

discrediting her mental impairment allegations as to her anger, inability to deal with others, and feeling isolated. Plaintiff's Opening Brief ("Pl.'s Br.") 15. However, the ALJ addressed plaintiff's alleged anger issues at step two of the sequential evaluation process, finding that they did not have more than a minimal effect on her ability to perform basic work activities. (Tr. 16.) Specifically, the ALJ noted that although plaintiff has had difficulties engaging in appropriate social interactions at times due to anger, it did not constitute more than a minimal limitation on her ability to work based on a medically determinable impairment. *Id.*

In support of her findings, the ALJ cited plaintiff's own testimony regarding her ability to perform her caregiver job which requires frequent, close interactions with her clients. (Tr. 17.) The ALJ further noted plaintiff did not endorse any difficulties with social functioning in her function report. *Id.* Accordingly, the ALJ provided clear and convincing reasons to discredit plaintiff's allegations of disabling anger, and conclude that any limitation was no more than mild. Although plaintiff has an alternative interpretation of the evidence, the ALJ's finding is upheld when, as here, it is rational and supported by substantial evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted).

The ALJ also discredited plaintiff's allegations as to the functional impact of her physical impairments. For example, the ALJ found plaintiff's ability to perform work and work-like activities was inconsistent with her allegation of being limited to lifting five pounds. (Tr. 18.) Plaintiff argues the ALJ mischaracterized her allegation, citing a comment in plaintiff's function report indicating it was very painful to lift more than five pounds. (Tr. 287.) While Plaintiff contends her statement cannot properly be construed in the manner it was by the ALJ, the relevant exhibit also reflects plaintiff additionally alleged she can only lift "about 5 lbs with my right arm."

Page 7 - OPINION AND ORDER

(Tr. 282.) Moreover, the ALJ recognized that plaintiff's allegations were not consistent throughout her function report, as plaintiff "alleged she could only lift five (or 10 per other parts of the report) pounds." (Tr. 18, 283.) Although plaintiff asserts that there was a "significant difference" between plaintiff's allegations and the ALJ's findings, plaintiff does not explain how any difference was significant. *See* Pl.'s Br. 15. However, even assuming the record is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings because they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Plaintiff argues next that although she was able to engage in work during the relevant time period, she was nonetheless hampered by pain, and as a result could not work full-time, and "her hours varied greatly." (Tr. 19.) Regardless of the precise variation in plaintiff's work hours over the adjudicative time period, the ALJ accurately found that she "had a substantial amount of paid work activity after the alleged onset date until the present." *Id.* The ALJ explicitly addressed plaintiff's argument, noting, "[w]hile her hours have varied greatly, this work activity supports the ultimate finding that she can sustain work within the residual functional capacity." *Id.* Indeed, the ability to maintain employment "with a fair amount of success" during an alleged period of disability has been upheld as convincing evidence supporting a non-disability decision. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

The ALJ further explained that plaintiff lost her job due to missing a meeting and refusing to sign a contract rather than any functional impairment arising from a medically-determinable condition, and indicated at the hearing that her hours were recently increased. *Id.* That a claimant leaves a job for reasons aside from a medically-determinable impairment are valid grounds to

discredit plaintiff testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Indeed, although plaintiff now suggests her employment ended due to her inability to get along with her superiors at work, plaintiff testified that she essentially quit her caregiver job at Ashley Manor in 2013. (Tr. 15, 19, 63-65.) There is no indication in the record that her employment was to be discontinued until she failed to show-up to work after collecting a paycheck. (Tr. 65.) Thereafter, she was employed by History Makers beginning in January 2014 through June 2014, the date of the decision; further, she was scheduled to increase her hours to 31 hours per week, and had three clients at the time. (Tr. 18.) For the foregoing reasons, the ALJ rationally interpreted the record and made specific findings with supported by the record; thus, plaintiff's alternate interpretation is unavailing. *Molina*, 674 F.3d at 1111.

Plaintiff also contends the ALJ failed to adequately support the finding that plaintiff's subjective pain allegations were inconsistent with the objective medical evidence. Plaintiff provides medical imagining evidence and medical descriptions of her degenerative disc disease and facet joint arthrosis, both of which, she argues, cause pain. Pl.'s Br. 15. However, as plaintiff recognizes, pain is subjective, and an ALJ is not compelled to simply accept all of a plaintiff's pain allegations. *Dodrill v. Shalala*, 12 F.3d 915, 917 (9th Cir. 1993) (citation omitted). Here, the ALJ provided other valid rationales in finding plaintiff's allegations not fully credible. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

Moreover, the ALJ provided a thorough summary and analysis of the medical record, in

which she found significant gaps between treatments. The ALJ pointed out that although the adjudicative period in this case began in January 2010, plaintiff did not report back pain until November 2010, where she had full range of motion with tenderness in her lumbar spine upon examination. (Tr. 20, 367-68, 374-75.) Despite her allegedly disabling pain, she did not again seek treatment for her back until May 2012. (Tr. 20, 354, 415-18.) Thereafter, there was a break in treatment until January 2014. (Tr. 20, 458-62.) After thoroughly reviewing the medical record, the ALJ determined that the "limited treatment record and lack of significant objective findings" demonstrated plaintiff was not as limited as she alleged. (Tr. 20.) An "individual's statements may be less credible if the level of frequency of treatment is inconsistent with the level of complaints." *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ's rationale is valid.

Finally, plaintiff argues the ALJ erred by evaluating her receipt of unemployment benefits. Specifically, plaintiff asserts the record is unclear as to whether she held herself out as being able to work full-time in order to receive benefits. The ALJ stated:

> While she claims to be unable to sustain full time [work], receipt of unemployment requires that during times her hours were reduced, she was willing to accept other full time, part time, or temporary work, and that she was physically and mentally capable of performing such work. Therefore, she was affirming that she would be able to work additional hours to what she was already.

(Tr. 19.) Plaintiff agues her position is supported by *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 155, 1161 (9th Cir. 2008), in which the Ninth Circuit panel found the record did not clearly establish that Carmickle held himself out as able to perform full-time as opposed to merely part-time work. *Id.* The Commissioner contends *Carmickle* is inapposite because in the instant case plaintiff was working part-time when she requested benefits, so arguably she was able to work more than part-time. Def.'s Br. 13. Although the somewhat vague evidence suggests plaintiff was willing to

Page 10 - OPINION AND ORDER

work more than part-time, the evidence does not necessarily reflect plaintiff was willing to accept full-time employment. Given that the record is vague on the issue, the ALJ's rationale does not meet the clear-and-convincing legal standard.

Nonetheless, any error in evaluating plaintiff's receipt of unemployment benefits is harmless in light of the other valid reasons the ALJ cited for impugning her symptom allegations. In other words, despite the error, the ALJ's other findings remain supported by substantial evidence, and were articulated with adequate clarity and specificity. The remainder of the ALJ's findings regarding the credibility of plaintiff's allegations regarding her pain and functional limitations are, therefore, upheld. *Carmickle*, 533 F.3d at 1162 (citing *Batson*, 359 F.3d at 1195-97).

II. Medical Opinion Evidence

Plaintiff assigns error to the ALJ's assessment of examining physician Anthony Glassman, M.D.[2] An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often by entitled to the greatest, if not controlling, weight. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citation and

---

[2] The Court notes that plaintiff does directly contest the ALJ's evaluation of the medical opinion of examining psychologist Allan R. Kirkendall, Ph.D in her written arguments. Because the court declines to manufacture the argument, and instead will "review only issues which are argued specifically and distinctly in a party's opening brief." *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)).

Page 11 - OPINION AND ORDER

internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted). On this record, Dr. Glassman's assessment was contradicted in part by the State agency medical examiners. Accordingly, the ALJ's reasons for rejecting the doctor's opinion must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 F.3d at 1012.

Dr. Glassman, following a January 2011 musculoskeletal examination, opined that plaintiff could stand and walk up to four hours per workday for no more than one hour at a time, and lift 20 to 35 pounds occasionally and 10 to 20 pounds frequently. (Tr. 20, 330.) The ALJ rejected the extent of Dr. Glassman's limitation assessment, adopting instead the State agency doctors' limitations of standing or walking six of eight hours, and lifting 50 pounds occasionally and 25 pounds frequently. (Tr. 18, 21, 120-21, 134-35.) The ALJ explained that she rejected Dr. Glassman's findings because they did not correlate to objective findings. (Tr. 20.) Indeed, Dr. Glassman noted there were "no objective findings on examination thus subjective complaints do not correlate with the exam." (Tr. 330.) The ALJ determined, therefore, that Dr. Glassman's physical restrictions warranted only limited weight because they were not supported by objective medical findings, although Dr. Glassman performed a wide range of musculoskeletal tests. (Tr. 330, 332-33.)

An ALJ is not required to accept any medical opinion that is brief, conclusory, or otherwise inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. Both the ALJ and the State agency doctors determined that Dr. Glassman's exertional limitations were, by the doctor's own

reckoning, not supported by objective findings. The record substantiates the lack of objective findings, as the results from Dr. Glassman's examination results all bear the same checkmark. *See* (tr. 332-33). Dr. Glassman further noted that there was "no evidence of joint deformity, effusion, erythema, or crepitus." (Tr. 330.) The doctor also observed full motor strength, normal gait, and heel and toe walking without difficulty. *Id.* Accordingly, there does not appear to be any objective basis for Dr. Glassman's assessed limitations.

Plaintiff argues that subsequent medical imaging results revealed mild facet joint arthrosis at L4-5 and moderate narrowing due to degenerative disc disease at L5-S1. Nevertheless, the imaging results do not change the fact that Dr. Glassman did not identify any range of motion deficiencies despite examining virtually all of plaintiff's bodily joints. (Tr. 332-33.) Moreover, Dr. Glassman himself admitted that plaintiff's subjective pain complaints did not correlate to the absence of objective findings. (Tr. 330.) As such, plaintiff's contention that Dr. Glassman "made his physical exertional findings consistent with his examination" is not supported by the record. *See* Pl.'s Br. 12. Instead, the ALJ reasonably inferred Dr. Glassman assessed physical limitations despite finding no objective evidence of physical limitations. (Tr. 330.) Thus, the ALJ did not err.

Plaintiff further argues the ALJ's analysis was deficient to the extent she failed to describe how her findings, rather than Dr. Glassman's, were correct. Pl.'s Br. 12. However, the ALJ explained that she chose to adopt the State agency doctors' functional assessment because it was "consistent with the claimant's work history and her continued work that involves assisting clients with transfers." (Tr. 21.) Accordingly, the limitations assessed by the ALJ were not arbitrary.

Plaintiff additionally argues the ALJ erred by failing to account for Dr. Glassman's opinion that plaintiff would need occasional breaks during her six hours of sitting during the workday. Pl.'s

Br. 12-13. However, the ALJ provided a specific and legitimate reason to disregard Dr. Glassman's opinion, and regardless of the special deference accorded treating and examining physicians, an ALJ is not required to accept *any* medical opinion that is not adequately supported by clinical findings. *Bayliss*, 427 F.3d 1211, 1216 (9th Cir. 2005). For all of the foregoing reasons, the ALJ did not err in rejecting Dr. Glassman's opinion.

III.  Lay Witness Testimony

Plaintiff argues the ALJ erred by rejecting the lay witness testimony of her mother, Linda Fabrazio, who completed a function report on December 9, 2010. *See* (tr. 274-81). Lay witness testimony is competent evidence which an ALJ must take into account unless the ALJ provides a germane reason to disregard it. *Dodrill*, 12 F.3d at 919; *see also Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

Here, the ALJ summarized Ms. Fabrazio's written testimony, which described that plaintiff "was easily frustrated, couldn't make change, and was in pain[,]" but found that "other evidence of record does not support the mentally based assertions and there are few mentions of physically based limitations . . . ." (Tr. 19.) Plaintiff argues the ALJ's reasoning "is not supported by the medical evidence," alleging the ALJ erroneously found plaintiff did not have a "severe" mental impairment at step two of the sequential evaluation process. Pl.'s Br. 13-14. Plaintiff further argues "the ALJ's assertions are not factually based." *Id.*

Plaintiff's arguments are unpersuasive. The ALJ reasoned that plaintiff had been able to maintain work despite her mental and physical limitations. Specifically, the ALJ noted that plaintiff's work "require[d] substantial interaction with clients for years." (Tr. 17.) The ALJ also pointed out that despite her allegations of severe mental limitation at the hearing, plaintiff did not

Page 14 - OPINION AND ORDER

endorse significant problems in social functioning in her self-report. (Tr. 286-89.) Rather, she indicated she did not have problems getting along with family, friends, neighbors or others; is good at following spoken instructions; gets along "OK" with authority figures; and has never been fired or laid off from a job because of problems getting along with other people. (Tr. 287.) Accordingly, it was neither unreasonable nor factually erroneous for the ALJ to find Ms. Fabrazio's assertions unsupported by the record, particularly considering plaintiff's testimonial evidence. Such an inconsistency is routinely upheld as a valid, germane rationale in the Ninth Circuit. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (inconsistency between a lay witness and claimant testimony is a germane reason to reject lay witness testimony); *see also Bayliss*, 427 F.3d at 1218 ("The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record . . . he rejected the portions of their testimony that did not meet this standard . . . .").

IV.  Step Two Assignment of Error

Plaintiff argues the ALJ erred by declining to find a severe mental impairment at step two of the sequential evaluation process. Here, the ALJ considered whether plaintiff had a medically determinable mental impairment that significantly limited her ability to perform basic work activities, and has lasted or is expected to last for at least 12 months. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c). Further, the medically determinable mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory techniques, not merely reported symptoms. 20 C.F.R. § 404.1528(a), (b). ALJ errors of omission at step two are often harmless if the step is decided in a claimant's favor. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). When an ALJ considers evidence of limitations posed by all of a claimant's impairments at step four, any error in omitting

that impairment at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ decided step two of the evaluation process in plaintiff's favor. (Tr. 15.) Furthermore, despite declining to find any mental impairments at step two, the ALJ nonetheless considered and discussed whether plaintiff had any mental limitations that affected her residual functional capacity. For example, the ALJ noted plaintiff denied having problems getting along with others, despite her contradictory allegations of severe anger issues. (Tr. 19, 287.) The ALJ also considered that despite plaintiff's alleged mental limitations, she was nevertheless able to engage in "a substantial amount of work and work-like activity throughout the alleged period of disability." (Tr. 19.) The ALJ additionally observed that plaintiff indicated she stopped working in June 2010 due to moving to Oregon rather than due to any severe impairment, and described simply walking away from her care-giver job at Ashley Manor after collecting a paycheck, rather than being terminated for impairment-related reasons. (Tr. 19, 63-65.) Finally, the ALJ found that plaintiff was employed at the time of the hearing acting as a care-giver to three clients, and that her hours had recently increased to 31 hours per week. (Tr. 19, 71.) As the ALJ indicated, plaintiff's job at the time of the hearing constituted substantial gainful activity. (Tr. 15, 21.) For these reasons, the record reflects the ALJ properly considered plaintiff's mental impairments at step four. Therefore, any error at step two is necessarily harmless. *Burch*, 400 F.3d at 682; *Lewis*, 498 F.3d at 911.

Plaintiff contends that two Ninth Circuit cases illustrate the ALJ erred by not finding any severe mental impairment at step two. First, plaintiff cites *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), for the proposition that a step two error may not be harmless where the ALJ omits a particular a severe impairment, but nonetheless decides the step in plaintiff's favor. Pl.'s Br. 8-9; Pl.'s Reply 4-5. However, in contrast to *Burch*, the ALJ's step two error in *Edlund* was not

Page 16 - OPINION AND ORDER

harmless because that ALJ failed to consider the effects of Edlund's mental impairment at subsequent steps of the evaluation process. *See Edlund*, 253 F.3d at 1160 ("[T]he ALJ failed to factor Edlund's mental impairments into her step 5 analysis...."). Thus, *Edlund* does not stand for the proposition that an ALJ's error in finding an impairment non-severe at step two is harmful error per se, even if the step was decided in plaintiff's favor. Rather, *Edlund* is distinguishable because the ALJ in that case neglected to consider *all* of the impairments at subsequent steps, in contrast to the step two error alleged in *Burch,* and that in the case at bar. *Supra.*

Plaintiff also asserts that *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005), requires the Commissioner carry the burden of proof at step two to prove that plaintiff's alleged mental impairment is *de minimus*. Pl.'s Reply 1-4. Plaintiff, however, misconstrues the language in *Webb*. The relevant passage states:

> [A]n ALJ may find that a claimant lacks a medically severe impairment *or* combination of impairments only when his conclusion is "clearly established by medical evidence" ... applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments.

*Webb*, 433 F.3d at 687. Plaintiff asserts that the passage stands for the proposition that the Commissioner carries the burden of proving that each separate impairment at step two has no more than a *de minimus* impact on the claimant's ability to work. Pl.'s Reply 2. This reading is erroneous.

First, the passage emphasizes that the Commissioner is "applying our normal standard of review to the requirements of step two...." *Webb*, 433 F.3d at 687. The normal standard of review referred to in *Webb* is that the burden of proof rests on the claimant as to steps one through four, and shifts to the Commissioner only at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999);

Page 17 - OPINION AND ORDER

*accord Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). Because the ALJ in *Webb* did not find any severe impairments at step two, and did not proceed to subsequent steps in the evaluation process, the circuit court had to determine if that finding was supported by substantial evidence. *Webb*, 433 F.3d at 687. Whereas the plaintiff in *Webb* alleged the ALJ erred in finding the claimant did not have "a severe impairment or combination of impairments[,]" here, plaintiff contends the ALJ failed to find a specific impairment was severe. *Id.* Plaintiff's reliance on *Webb* is misplaced because here the ALJ subsequently considered the evidence of the impact of the allegedly omitted impairment at later steps, nullifying the harm of the alleged error. *See, e.g., Lewis*, 498 F.3d at 911; *Burch*, 400 F.3d at 682; *see also Bickell v. Astrue*, 343 Fed.Appx. 275, 278 (9th Cir. 2009). Because the ALJ in *Webb* ended the inquiry after step two, and found Webb not disabled, the error was harmful. *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

Finally, plaintiff argues the ALJ found no severe mental impairment at step two because she did not adequately consider medical records from Douglas County Mental Health. Pl.'s Reply 2-3. However, for the reasons described above, even assuming the ALJ erred in failing to find a severe mental impairment at step two, any error was harmless. Moreover, the record reflects that the ALJ explicitly considered records from Douglas County Mental Health in determining whether plaintiff's mental impairment was severe. *See* (tr. 16 (citing tr. 442)).

This court's assessment of the Commissioner's decision is "a highly deferential standard of review." *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 690 (9th Cir. 2009). For all the reasons explained herein, the ALJ's decision comports with the record as a whole, and is based on substantial evidence such that "a reasonable mind might accept it as adequate to support a conclusion." *Desrosiers v. Secretary of H.H.S.*, 846 F.2d 573, 575-76 (9th Cir. 1988) (internal

citations omitted).

*Conclusion*

For the reasons stated above, the Commissioner's decision is AFFIRMED and this case is hereby DISMISSED.

IT IS SO ORDERED.

DATED this 21st day of April 2017.

_____
JOHN V. ACOSTA
United States Magistrate Judge